UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| P.A.L. ENVIRONMENTAL SAFETY CORP. | Case No. 19-11630 |
| Plaintiff, | SENIOR U. S. DISTRICT JUDGE ARTHUR J. TARNOW |
| v. | U.S. MAGISTRATE JUDGE DAVID R. GRAND |
| NORTH AMERICAN DISMANTLING CORP. ET AL. | |
| Defendants. | |

**ORDER GRANTING NADC'S MOTION TO AMEND TO ASSERT A CROSS COMPLAINT AGAINST CEC [29] AND GRANTING IN PART AND DENYING IN PART CEC'S MOTION FOR RECONSIDERATION [41]**

Plaintiff P.A.L. Environmental Safety Corp. ("PAL") is a corporation that conducts asbestos abatement work for demolition projects. Defendant Consumers Energy Company ("CEC") owns the JC Weadock Power Plant in Essexville, Michigan, ("Power Plant") which was abated, dismantled, and demolished pursuant to a contract with the project's prime contractor: Defendant North American Dismantling Corporation ("NADC"). NADC subcontracted with PAL to perform the asbestos abatement phase of the project. Defendant North American Specialty

Insurance Company ("NASIC") is the surety on a labor and material payment bond issued to PAL on behalf of NADC. PAL is suing all three defendants to recover $23,841,833.37 in unpaid labor and materials for its asbestos abatement work at the Power Plant.

Before the Court are two motions: NADC's Motion to Amend to Assert A Cross Complaint Against CEC [29] and CEC's Motion for Reconsideration [41], respectively filed on December 17, 2019 and June 11, 2020. First, NADC's Motion to Amend [29] seeks to assert common law indemnity (Count I) and implied contractual indemnity (Count II) against CEC. (ECF No. 29-1). Although, CEC originally opposed the motion in its Response [30] on December 30, 2019, it since changed course and filed an Answer [53] to the Cross Complaint [47] on December 8, 2020. Regardless, because the Court finds that the alleged cross claims arise from the same transaction and occurrence as the original complaint, the Motion [29] is **GRANTED**. Second, CEC's Motion for Reconsideration [41] asks the Court to cure defects in the Order Granting in part and Denying in part CEC's Motion to Dismiss [39]. For the reasons stated below, the Motion [41] is **GRANTED in part and DENIED in part**.

## Factual Background

On August 4, 2017, Defendant CEC, as owner, and NADC, as prime contractor, entered into a written contract in which NADC agreed to abate, dismantle, and demolish the JC Weadock Power Plant ("Prime Contract"). (Am. Compl. at ¶ 21). On or about August 29, 2017, PAL, as subcontractor, and NADC, as prime contractor, entered into a written subcontract in which PAL agreed to perform abatement of all asbestos containing material ("ACM") at the Power Plant ("Subcontract"). (Am. Compl. at ¶ 23). PAL alleges that the scope of the subcontract is dictated by its August 15, 2017 proposal. (*Id.*).

The Subcontract price for PAL's abatement work was $7,996,331. (Am. Compl. at ¶ 24). However, as a result of performing extra and changed work, PAL alleges that it is entitled to an adjusted contract price of $23,883,739.37. (Am. Compl. at ¶ 25). Specifically, PAL alleges that it performed three categories of additional work: (1) fly ash and coal dust removal, (2) refractory brick abatement, and (3) an extra amount of ACM removal.

In its proposed Cross Complaint, NADC seeks to assert common law indemnity (Count I) and implied contractual indemnity (Count II) against CEC. (ECF No. 29-1). NADC claims that its potential liability to PAL is derivative of CEC's actions in "(a) commissioning the Golder Report, (b) allowing and ratifying

Amec Foster Wheeler/Wood to direct PAL's abatement work and (c) directing PAL to complete extra work without providing for appropriated changes to the Prime Contract and Subcontract and without allocating additional funds to compensate NADC and PAL." (*Id.* at 889) In addition, NADC claims CEC breached their Prime Contract (Count III) by terminating the contract and failing to pay $2,584,186 in retainage afterwards for NADC's work on the project. (*Id.* at 893-94).

## ANALYSIS

I. **NADC's Motion to Amend [29]**

Although stylized as a motion to amend its counter complaint, the Court properly construes NADC's motion [29] as a motion to assert a cross claim under Federal Rule of Civil Procedure 13(g). Rule 13 states the following:

> **(g) Crossclaim Against a Coparty.** A pleading may state as a crossclaim any claim by one party against a coparty if the claim arises out of the transaction or occurrence that is the subject matter of the original action or of a counterclaim, or if the claim relates to any property that is the subject matter of the original action. The crossclaim may include a claim that the coparty is or may be liable to the crossclaimant for all or part of a claim asserted in the action against the crossclaimant.

FED. R. CIV. P. 13 (g). The Sixth Circuit has stated that Rule 13 should be liberally construed and is "intended to avoid circuity of action and to dispose of the entire subject matter arising from one set of facts in one action, thus administering

complete and evenhanded justice expeditiously and economically." *LASA Per L'Industria Del Marmo Societa Per Azioni of Lasa, Italy v. Alexander*, 414 F.2d 143, 146 (6th Cir. 1969) (quoting *Blair v. Cleveland Twist Drill Co.*, 197 F.2d 842, 845 (7th Cir. 1952). Furthermore, if a cross-claim "arises[s] out of the subject matter of the original action and involves the same persons and issues [then] the claim is ancillary to the original action[,]" meaning that "if the court has jurisdiction to entertain the original action, no independent basis of jurisdiction for the cross-claim . . . need be alleged." *Id.* (quoting *Glens Falls Indemnity Co. v. United States*, 229 F.2d 370, 373-74 (9th Cir. 1955)).

Here, NADC seeks the relief contemplated by the last sentence of Rule 13(g) through common law and contractual indemnification. *See* FED. R. CIV. P. 13 (g) ("The crossclaim may include a claim that the coparty is or may be liable to the crossclaimant for all or part of a claim asserted in the action against the crossclaimant."). Specifically, the claims assert that CEC should "indemnify and hold NADC harmless" if NADC is "found liable to PAL for extra work PAL performed on the project." (ECF No. 29-1, PageID.889, 891). Additionally, NADC seeks a to recover the retainage for its work on the Power Plant. Because these claims arise from the same set of facts as the original complaint —work on the Power Plant

— and their adjudication in this action would promote judicial economy, the Court grants NADC's Motion [29].

## II.  CEC's Motion for Reconsideration [41]

On May 28, 2020, this Court issued an order denying in part and granting in part CEC's Motion to Dismiss [7], which dismissed PAL's third-party beneficiary claims against CEC and upheld PAL's promissory estoppel, unjust enrichment, and negligent misrepresentation claims against CEC. CEC has filed a Motion for Reconsideration [41] pursuant to E.D. Mich. 7.1 (h). In order to grant such a motion, the movant must "not only demonstrate a palpable defect by which the court and the parties and other persons entitled to be heard on the motion have been misled but also show that correcting the defect will result in a different disposition of the case." E.D. Mich. 7.1 (h)(3). Further, it "may generally be granted for three reasons: (1) an intervening change in the law; (2) evidence not previously available has become available; or (3) the necessity to correct a clear error of law or prevent manifest injustice." *DirecTV, Inc. v. Karpinsky*, 274 F. Supp. 2d 918, 920-21 (E.D. Mich. 2003). Here, the Court finds a clear error of law that necessitates a partial reconsideration of its previous Order [40].

Relying on *Morris Pumps v. Centerline Piping, Inc.*, this Court held that PAL could proceed with its promissory estoppel and unjust enrichment claims against

CEC. 273 Mich. App. 187 (2006). Based on the principle that "an implied contract may not be found if there is an express contract *between the same parties* on the same subject[,]" the court in *Morris Pumps* found that a supplier of materials could sue a general contractor for unjust enrichment, because although both parties separately contracted with the subcontractor, neither of them contracted with one another. *Id.* at 190-91, 194-95 (emphasis in original). Following this logic, the Court did the same here, implying a contract between PAL and CEC where none existed.

CEC has now brought to the Court's attention a more recent precedent, *Landstar Express Am., Inc. v. Nexteer Auto. Corp*, that it argues limits *Morris Pumps*' holding. 319 Mich. App. 192 (2017). Although the Court does not find that *Landstar Express Am., Inc* explicitly limits *Morris Pumps*, it does highlight the key animating factor in deciding whether to imply a contract: whether there is a contract covering the same subject matter, the existence of which is "sufficient to preclude the imposition of any implied contract" contrary to the express contracts. *Id.* at 202. In *Landstar Express Am., Inc*, although no express contracts existed between plaintiff and defendants, plaintiff could not pursue an unjust enrichment claim, because defendants "were parties to express contracts related to the subject matter." *Id.* at 202-03. Other courts agree with this approach. *See Belle Isle Grill Corp. v. City of Detroit*, 256 Mich. App. 463, 478 (2003) ("a contract will be implied only if

there is no express contract covering the same subject matter"); *see also Bartosiewicz v. A2Q, LLC*, No. 345942, 2020 WL 1286227, at *11 (Mich. Ct. App. Mar. 17, 2020) (finding that plaintiff could not pursue an unjust enrichment claim, because she had express contracts regarding the terms in question); *see also Skywatcher, LLC v. Oliver*, No. 1:19-CV-409, 2020 WL 4904170, at *6–7 (W.D. Mich. Aug. 20, 2020).

Additionally, promissory estoppel can only be enforced when an express contract on the same subject matter does not exist. *See Novak v. Nationwide Mut. Ins. Co.*, 235 Mich. App. 675, 687 (1999) (declining to enforce a promise that "expressly contradicted" to parties' signed contract); *see also APJ Assocs., Inc. v. N. Am. Philips Corp.*, 317 F.3d 610, 617 (6th Cir. 2003) ("Promissory estoppel may not be used to override the express agreement of the parties contained in written agreements . . . For the court to apply promissory estoppel under Michigan law, it must find that an implied agreement exists between the parties, in the absence of an express contract. (citing *Barber v. SMH, Inc.,* 202 Mich.App. 366, 509 N.W.2d 791 (1993))); *see also Aero Taxi-Rockford v. Gen. Motors Corp.,* No. 259565, 2006 WL 1479915, at *10 (Mich. Ct. App. May 30, 2006) (upholding plaintiff's promissory estoppel claim against defendant as an alternative to a breach of contract claim

between plaintiff and defendant's agent, but only if a jury "fails to find the existence of an express contract" on the same subject matter).

Upon further review, *Landstar Express Am., Inc* and its progeny are clear — an express contract on the same subject matter precludes the Court from implying one. Here, PAL's express contract with NADC addresses the same subject matter it attempts to litigate against CEC through equitable means: its abatement of the Power Plant. Therefore, under the weight of this case law, PAL cannot seek equitable claims of promissory estoppel and unjust enrichment against CEC.

CEC similarly challenges upholding PAL's negligent misrepresentation claim against it. The Court held that the parole evidence rule did not apply, because no contract with an integration clause exists between PAL and CEC. CEC, however, now argues that the integration clause in PAL's Subcontract applies to CEC, because it is not limited to representations between the contracting parties.

"A written integration clause is conclusive evidence that the parties intended the document to be the final and complete expression of their agreement" such that extrinsic evidence could not be used to vary its terms. *ADR N. Am., L.L.C. v. Agway, Inc.*, 303 F.3d 653, 658 (6th Cir. 2002). "Where parties have deliberately put their agreement into writing . . . it is conclusively presumed that their whole engagement,

and the extent and manner of the undertaking, were reduced to writing; and no evidence is permitted tending to vary or contradict its terms, or to substitute a new or different contract for it." *Komraus Plumbing & Heating, Inc. v. Cadillac Sands Motel, Inc.*, 387 Mich. 285, 291 (1972).

Here, the Subcontract's integration clause states: "[t]his Agreement represents *the entire and integrated agreement between the Parties* and supersedes all prior negotiations, representations or agreements, either written or oral." (ECF No. 7-10, PageID.208) (emphasis added). The clause explicitly states that that the Subcontract is the integrated agreement of the contracting parties. This indicates that the excluded prior representations are limited to the representations of the contracting parties. Because the Court's analysis does not amount to a palpable defect, CEC's Motion to Reconsider [41] as to PAL's negligence misrepresentation is denied.

## Conclusion

For the reasons stated above, the Court **GRANTS** NADC's Motion to Amend to Assert a Cross Complaint [29] and **GRANTS in part and DENIES in part** CEC's Motion for Reconsideration [41]. This ruling has the effect of dismissing Counts III and V of PAL's Amended Complaint [44] (Unjust Enrichment and Promissory Estoppel).

Accordingly,

**IT IS ORDERED** that NADC's Motion to Amend to Assert A Cross Complaint Against Consumer's Energy Company [29] is **GRANTED.**

**IT IS FURTHER ORDERED** that CEC's Motion for Reconsideration [41] is **GRANTED in part and DENIED in part.**

**SO ORDERED**.

                                          s/Arthur J. Tarnow
                                          Arthur J. Tarnow
Dated: February 18, 2021        Senior United States District Judge